Filed 12/27/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| PAGLIA & ASSOCIATES CONSTRUCTION, INC., et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> V.J. HAMILTON, <br><br> Defendant and Appellant. | B313864 <br><br> Los Angeles County <br> Super. Ct. No. 21STCV02725 |

APPEAL from an order of the Superior Court of Los Angeles County, Rupert Byrdsong, Judge. Affirmed.

Jeff Lewis Law, Jeffrey Lewis and Sean C. Rotstan for Defendant and Appellant.

Morris & Stone, Aaron P. Morris; Christopher J. Koorstad for Plaintiffs and Respondents.

_____

Vanessa Hamilton used the internet to censure her contractor, who sued her for defamation. Hamilton filed a special motion to strike his lawsuit, claiming the litigation privilege immunized her. Her comments were akin to press releases, however, and were unprivileged. We affirm the denial of her

anti-SLAPP motion.  Undesignated code citations are to the Code of Civil Procedure.  We use "special motion to strike" and "anti-SLAPP motion" as synonyms.  (See § 425.16.)

I

Insurer Safeco covered the damage when a tree fell on Hamilton's house.  For the repair work, Safeco recommended Vincent T. Paglia and his company, Paglia & Associates Construction, Inc., doing business as Protech Construction—a group we refer to collectively as Paglia.  Hamilton signed a repair contract with Paglia in 2016.  Paglia said the required repair was extensive because Hamilton's 1923 home was in poor condition and current building codes required extensive reconstruction. Paglia finished in 2017.

Unhappy with Paglia's work, Hamilton reported him to the Contractors State License Board.  This agency's proceedings are germane because Hamilton claims they triggered a litigation privilege for her.  Hamilton alleged the Board in 2019 assessed $4,750 in civil penalties against Paglia and ordered him to pay Hamilton $20,371.  Paglia's failings were numerous, according to Hamilton, and included, among many other items, failure to level the front and back yards, failure to install attic vents, and failure to provide a proper driveway width.

Hamilton began posting critiques of Paglia in 2019.  She continued her blog and Yelp attacks through January 2021. Some, but not all, of Hamilton's posts mentioned the contractors board.

On February 20, 2020, for instance, Hamilton posted to her blog that Paglia had "turned my life upside down. . . .  Paglia committed 'hard fraud' in that he destroyed undamaged structures.  He also submitted a different set of plans to Public

2

Works in order to get a rebuild permit that he misused to build this piece of junk structure that stands in place of my 1923 Rambler cottage . . . ." This posting did not mention the contractors board.

On January 15, 2021, Hamilton posted a lengthy statement on Yelp. We excerpt its beginning and end, without adding or changing punctuation.

"Lesson Learned from Protech Protech is Deceptive and Threatening Lesson #1 Contractors and Insurance Adjusters maintain confidential relationships that exclude the consumer. . . . This structure is all laminate and used goods that came from other projects Protech was working on in the area. Protech left me with no owners manuals, warranties, or receipts, but they took money that I did not authorize[] they be paid. Lesson #4 Never use[] a contractor from Protech."

In 2021, Paglia sued Hamilton for libel per se, alleging Hamilton's blog and Yelp postings were false and defamatory. Paglia's complaint identified more than 20 statements he claimed were libels.

Hamilton filed a special motion to strike. Her notice of motion stated it sought to strike Paglia's entire complaint. It did not ask the court to strike particular parts. In opposition to Hamilton's motion, Paglia discussed three of her blog posts and two Yelp reviews. The court denied Hamilton's motion. The record offers no account of the court's reasoning. Hamilton appealed.

II

We affirm because Paglia supplied facts that defeated Hamilton's anti-SLAPP motion. Hamilton said her attacks on Paglia were privileged, but the litigation privilege does not cover

3

statements made entirely outside the litigation context.  Using the internet to speak publicly is every American's right but, if people wish to defame private figures online, they do so at their own risk.

A

Analysis of special motions to strike proceeds in two steps.  Without considering the first step about protected activity, we focus on step two:  whether Paglia met his factual and legal burden of showing his claims had minimal merit.  (See *Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009.)

This second step required Paglia to demonstrate a probability of success.  In this summary-judgment-like process, courts do not weigh evidence or resolve conflicting factual claims.  Instead they evaluate whether plaintiffs like Paglia have produced evidence to support legally sufficient claims.  Accepting that evidence as true, courts decide whether the motion defeats the plaintiff's claims as a matter of law.  The motion fails if the lawsuit has minimal merit.  Appellate review is independent. (*Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 788.)

In reviewing Paglia's evidence, we do not resolve credibility disputes or evidentiary conflicts.  (*Taus v. Loftus* (2007) 40 Cal.4th 683, 714.)  A court cannot grant a special motion to strike if the plaintiff has presented evidence that, if believed, would support a cause of action.  (*Id.* at pp. 729, 736.)

Paglia sued Hamilton for libel.  Libel is a false and unprivileged written publication tending to injure a victim's occupation.  (Civ. Code, § 45.)  Libel is per se when the words require no explanation and thus are actionable without a showing of special damages.  (*Slaughter v. Friedman* (1982) 32 Cal.3d 149, 153.)

4

B

A customer's false public statement that her contractor committed "hard fraud" is libel as a prima facie matter, for that statement would tend to injure the contractor's occupation. Hamilton maintains, however, Paglia failed to establish a case of minimal merit (1) because the litigation privilege protected her; (2) because Paglia's complaint did not allege Hamilton's statements were unprivileged; (3) because her statements were true; and (4) because her statements were merely her opinions, which are inactionable. This appeal turns on a legal analysis of these four defenses, which, upon inspection, fail.

Before proceeding, we note Hamilton's motion tackled Paglia's suit in its entirety. Because Hamilton's motion did not target subsets of Paglia's pleading, Paglia prevails if any of his claims succeed. We thus will go no further than Paglia's first factual allegation.

1

The litigation privilege is Hamilton's first defense. She argues her statements related to a matter under consideration by the contractors board—a state agency that was adjudicating her complaints against Paglia. We hold her online postings were not sufficiently connected to this agency's proceedings. Instead, they were like press releases: efforts to communicate with the public at large. The litigation privilege does not protect press releases. It did not protect Hamilton.

California's litigation privilege springs from Civil Code section 47. This statute provides that "A privileged publication or broadcast is one made: (a) In the proper discharge of an official duty [or] (b) In any (1) legislative proceeding, (2) judicial

5

proceeding, (3) in any other *official proceeding authorized by law*, . . ." (Italics added.)

The litigation privilege applies to any communication made in judicial or quasi-judicial proceedings by litigants or other participants to achieve the objects of the litigation that has some connection or logical relation to the action. (*Silberg v. Anderson* (1990) 50 Cal.3d 205, 211–212 (*Silberg*).)

The Supreme Court interprets the privilege broadly to further its salutary purposes. The main purpose is to afford litigants and witnesses complete access to courts without fear of later harassment by derivative tort actions. If parties, lawyers, and witnesses worried their words could be the subject of retaliatory libel attacks from disgruntled trial losers, their worry could inhibit open communication in judicial proceedings. Their fear could dampen the full presentation of evidence. The litigation privilege thus allows citizens to communicate freely with public authorities combating wrongdoing. (*Silberg*, *supra*, 50 Cal.3d at pp. 212–213.)

By immunizing litigation participants from tort liability, the privilege helps litigants during trial expose "the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and avoiding an unending roundelay of litigation, an evil far worse than an occasional unfair result." (*Silberg*, *supra*, 50 Cal.3d at p. 214.)

The litigation privilege thus is the backbone of an effective and smoothly operating judicial system: it ensures free access to the courts, promotes complete and truthful testimony, encourages zealous advocacy, gives finality to judgments, and avoids unending litigation. (*Silberg*, *supra*, 50 Cal.3d at pp. 214–215.)

6

Yet every privilege has limits.  In pursuit of desirable policy goals, an absolute privilege can create injustice by barring actions that would vindicate injuries from false and defamatory statements.  At some point, an absolute privilege must give way.  But at what point?

The decision in *Rothman v. Jackson* (1996) 49 Cal.App.4th 1134, 1149 (*Rothman*) marked one boundary.  *Rothman* held the litigation privilege does not extend to litigating in the press.  "Such an extension would not serve the purposes of the privilege; indeed, it would serve no purpose but to provide immunity to those who would inflict upon our system of justice the damage which litigating in the press generally causes:  poisoning of jury pools and bringing disrepute upon both the judiciary and the bar." (*Ibid.*)

*Rothman* was in the context of a lawsuit in *court*.  The litigation privilege, however, also covers proceedings before *agencies* like the contractors board.  (See Civ. Code, § 47, subd. (b)(3); *Hagberg v. Cal. Federal Bank* (2004) 32 Cal.4th 350, 362–364; *Billauer v. Escobar-Eck* (2023) 88 Cal.App.5th 953, 965 (*Billauer*).)  In the agency context, *Rothman*'s principle remains the same:  the litigation privilege does not extend to press releases or other attempts to communicate with the public that lack any other connection to the government proceeding at issue. (*Ibid.*)

In short, the litigation privilege must have a substantial connection to litigation, whether judicial or otherwise.  To enjoy this privilege, the communication—whether it be a document filed with the adjudicator, a letter between counsel, or some oral statement—must function as a useful step in the litigation process and must serve its purposes.  "This is a very different

7

thing from saying that the communication's *content* need only be related in some way to the subject matter of the litigation." (*Rothman, supra*, 49 Cal.App.4th at p. 1146.)

Hamilton's postings lacked a substantial connection to litigation. Her posts were not letters to board officials asking them to investigate Paglia. They were not filings with the contractors board. They were not messages between counsel or parties in the course of litigation.

Hamilton's posts were merely public denunciations of Paglia. Some did not mention the contractors board at all. Those that did simply aired Hamilton's dissatisfaction with Paglia.

Hamilton's Yelp and blog posts could advance her case before the contractors board only by rallying public opinion to her cause and by pressuring the board to bow to that opinion. Otherwise her statements would have no effect on, and no relevance to, the board. But *Rothman* rightly condemned using this privilege to try matters in the court of public opinion.

The litigation privilege did not insulate Hamilton from liability. Hamilton was fully entitled to post about Paglia or any other topic, but she did not enjoy absolute liberty to write, free from all obligation to the truth.

Hamilton's first defense to Paglia's factual showing fails.

2

Hamilton argues Paglia's complaint failed to *plead* that Hamilton's statements were unprivileged, and this omission guarantees victory for her special motion to strike. In response, however, Paglia quotes, with our italics, *Morris v. Nat. Federation of the Blind* (1961) 192 Cal.App.2d 162, 164: "privilege is an *affirmative defense* which must be pleaded in the *answer*." Hamilton does not contest the validity, or attempt to

8

argue against, the *Morris* case. Rather, she cites *Whelan v. Wolford* (1958) 164 Cal.App.2d 689, 693 for the proposition that, "[w]hen a complaint alleges facts disclosing the application of a privilege, the burden rests on the plaintiff to establish that the statements at issue are unprivileged."

The burden indeed rested on plaintiff Paglia to show, in opposition to the special motion to strike, that Hamilton's statements were unprivileged. Paglia discharged this burden, as the previous section demonstrated: Paglia demonstrated Hamilton's statements were unprivileged. Whether Paglia's complaint pleaded an affirmative defense is immaterial.

Hamilton's second defense fails.

3

Hamilton asserts her statements were true. Paglia's evidence showed otherwise, however, and we accept his evidence at this stage.

Hamilton wrote "Paglia committed 'hard fraud' in that he destroyed undamaged structures." But Paglia's evidence established that he committed no fraud and that building codes required him to do extensive work on Hamilton's old house beyond simply fixing the tree damage. Hamilton made no evidentiary reply to Paglia.

In sum, the facts showed Paglia did his work, not for a fraudulent reason, but to comply with building codes. For purposes of evaluating Hamilton's special motion to strike, her posting was untrue.

Hamilton's third defense fails.

4

Hamilton argues her writings were not actionable because they were merely opinions. On this point, the dispositive

9

question is whether a reasonable fact finder could conclude the statement declares or implies a provably false assertion of fact. (*Edward v. Ellis* (2021) 72 Cal.App.5th 780, 790.)  A fact finder could conclude Hamilton's statement announced a fact.  Whether the destruction of structures was needless and fraudulent, or whether modern building codes compelled this work, is a matter that can be proven or disproven.  Hamilton asserted facts, not opinions.  Hamilton's fourth defense fails.

5

As an alternative to striking Paglia's whole complaint, Hamilton asks us to strike individual portions of his complaint "identified throughout this brief and in the Table of Statements for which [the Court of Appeal] finds Paglia failed to meet his burden."

Hamilton included a "Table of Statements" in her opening brief.  Her table lists 22 of Hamilton's statements Paglia attacked as libels.

Each of the 22 statements requires a different set of legal arguments, authorities, facts, and record citations.

Hamilton's request in effect is for this court to develop, at her demand, 22 different, detailed, and individual legal and factual analyses.  Her briefing omits these 22 analyses.

Appellants may not enlist the court as their legal assistant to develop arguments they merely suggest.  The duty to present legal analysis belongs to the parties.  It would be unfair for one side to loft an undeveloped legal idea, to rely on the court to work it out, and to leave the opposing party with nothing concrete to tackle in the briefing.  (Cf. *Hewlett-Packard Co. v. Oracle Corp.* (2021) 65 Cal.App.5th 506, 565 [failing to develop a reasoned argument supported by authority improperly forces the court to

10

decode a bare assertion that the judgment, or part of it, is erroneous]; *United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153 [to demonstrate error, an appellant must supply the court with cogent argument supported by analysis and record citations].)

Hamilton's lack of individualized argumentation on her 22 ideas forfeited these grounds for appeal.

## DISPOSITION

We affirm the order and award costs to respondents.


                                        WILEY, J.

We concur:


        STRATTON, P. J.



        VIRAMONTES, J.

11